UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JANE DOE | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 1:22-cv-00545 (CMH/TCB) |
| | : |
| CENK SIDAR | : |
| | : |
| Defendant. | : |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO OBTAIN PHYSICAL
EXAMINATION OF AND DNA SAMPLE FROM DEFENDANT**

Defendant, Cenk Sidar ("Defendant"), by counsel, submits the following Opposition to Plaintiff Jane Doe's ("Plaintiff) Motion to Obtain Physical Examination of and DNA Sample from Defendant ("Motion").

Plaintiff's Motion should be denied, as a threshold matter, on the grounds that she failed to comply with this Court's Local Rules, including the requirement of a meaningful meet-and-confer. Additionally, Plaintiff fails to demonstrate that a DNA sample from Defendant is relevant to any party's claim or defense because Plaintiff fails to explain how she intends to compare a DNA sample compelled from Defendant to anything. Plaintiff also falls far short of her burden of establishing a prima facie showing of a reasonable possibility of a match between the alleged DNA sample from her and one from Defendant. Additionally, Plaintiff's grossly overbroad and vague request fails to comply with Rule 35 by omitting, *inter alia*, the manner, conditions, and scope of the examination, as well as the person(s) who will perform it. In sum, Plaintiff is making a request for unprecedented "relief" with little more than the unverified general allegations in her complaint as support. As such, her request should be denied and Defendant should be granted a protective order.

I. **BACKGROUND.**

On May 12, 2022, Plaintiff Jane Doe filed a Complaint against Defendant for assault (Count I), battery (Count II), and intentional infliction of emotional distress (Count III) resulting from an alleged rape. On July 15, 2022, Plaintiff served to Defendant Plaintiff's Notice of Physical Examination and DNA Sampling of Defendant ("Notice") (ECF No. 26-1). The Notice provides that Plaintiff "will conduct an [sic] Physical Examination of Defendant . . . which will include the taking of a sample of Defendant's Deoxyribonucleic acid (DNA)." ECF No. 26-1 at 1. The Notice is "for the taking of samples of Defendant's DNA for the purposes of DNA testing

and comparison with DNA that was found on the clothes of Plaintiff and in Plaintiff's rape kit." ECF No. 26-1 at 1.

Plaintiff continues that "[t]hese tests will be analyzed by one or more independent laboratories of Plaintiff's choosing" and that "Defendant will present himself for the taking of these samples at the office of Plaintiff's Counsel . . . ." ECF No. 26-1 at 1. The Notice provides that "[t]he inspection and taking of the DNA sample will be for the purpose, *among other things*, of determining whether Defendant's DNA was found on Plaintiff's clothes and/or in Plaintiff's rape kit taken by The Havens." ECF No. 26-1 at 1 (emphasis added). Plaintiff asserts that "[t]his information will further be relevant to Plaintiff's claim for punitive damages." ECF No. 26-1 at 1. As detailed in Part II.B, *infra*, Plaintiff failed to make any meaningful effort to meet and confer regarding the compulsion of a DNA sample, essentially just requesting Defendant's counsel's availability for a hearing; the first of the two dates offered would not have even permitted a full briefing schedule.

A few hours after serving her Notice, also on July 15, 2022, Plaintiff filed her Motion to Obtain Physical Examination of and DNA Sample from Defendant ("Motion").[1] In her Motion, "Plaintiff seeks samples of Defendant's blood, hair, skin, urine, and a saliva swab for purposes of DNA testing and comparison with DNA that was found on the clothes of Plaintiff and in Plaintiff's rape kit" and asserts that "[t]hese tests will be analyzed by one or more independent laboratories of Plaintiff's choosing." ECF No. 26 ¶ 2. Plaintiff reiterates that she "seeks to have Defendant present himself for the taking of these samples **at the office of Plaintiff's Counsel**" and that "[t]he inspection will be for the purpose, *among other things*, of determining whether

---

[1] Plaintiff failed once again to comply with the local rules which require a separate motion and written brief. *See* Local Civ. R. 7(F)(1); Local Civ. R. 37(A) (noting that a motion to compel "must be accompanied by a brief").

Defendant's DNA was found on Plaintiff's clothes and/or in Plaintiff's rape kit taken by the Havens." ECF No. 26 ¶¶ 3-4 (emphasis added).

In accordance with Local Rule 26(C), simultaneously with this Opposition, Defendant serves his objections to the Notice. *See* **Exhibit A**, Defendant's Objections to Plaintiff's Notice of Physical Examination and DNA Sampling of Defendant.

## II.    ARGUMENT.

### A.    Legal Standard.

Rule 35 provides that a court "may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). An order "may be made only on motion for good cause." Fed. R. Civ. P. 35(a)(2)(A). The Fourth Circuit has held that "[u]nder Rule 35, the invasion of the individual's privacy by a physical or mental examination is so serious that a strict standard of good cause, supervised by the district courts, is manifestly appropriate." *Guilford Nat'l Bank of Greensboro v. S. Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962); *see also Petition of Trinidad Corp.*, 238 F. Supp. 928, 936 (E.D. Va. 1965) (relying on the United States Supreme Court opinion *Schlagenhauf v. Holder* and stating "[i]t is plain" that the good cause requirement under Rule 35 "is not to be treated lightly").

The United States Supreme Court has discussed the "in controversy" and "good cause" requirements applicable to Rule 35, stating that these requirements "are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). Therefore, the Court noted,

Rule 35 "requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations had adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause.'" *Id.* at 118-19. "[T]he movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule." *Id.* at 119. Furthermore, even if a party shows good cause, the court still has discretion as to whether to order an examination under Rule 35. *See, e.g., Curtis v. Express, Inc.,* 868 F. Supp. 467, 468 (N.D.N.Y. 1994) ("Even if good cause is shown, it is still within the court's discretion to determine whether to order an examination."); *Great W. Life Assurance Co. v. Levithan*, 153 F.R.D. 74, 76 (E.D. Pa. 1994) ("Thus, an order for the physical or mental examination of a party is not granted as of right and when the matter is contested, it is addressed to the sound discretion of the trial court."); *Peters v. Nelson*, 153 F.R.D. 635, 638 (N.D. Iowa 1994) ("Rather, even when good cause is shown, whether to order a proposed examination is committed to the discretion of the court."); *Stinchcomb v. U.S.*, 132 F.R.D. 29, 30 (E.D. Pa. 1990) ("Even when good cause is shown, whether to order a proposed examination is committed to the discretion of the court."); *Hardy v. Riser*, 309 F. Supp. 1234, 1241 (N.D. Miss. 1970) ("Even when the 'good cause' and 'in controversy' requirements are met, it is still in the sound discretion of the trial court whether to order the examination.").

    **B.**    **Plaintiff Failed to Make Any Meaningful Effort to Meet and Confer.**

As a threshold matter, Plaintiff, through her counsel, failed to make any meaningful effort to meet and confer before filing the present Motion, in derogation of the Local Rules. Local Civil Rule 37, relating to Motions to Compel and Sanctions, provides:

> Counsel shall confer to decrease, in every way possible the filing of unnecessary discovery motions. No motion concerning discovery

> matters may be filed until counsel shall have conferred in person or by telephone to explore with opposing counsel the possibility of resolving the discovery matters in controversy. The Court will not consider any motion concerning discovery matters unless the motion is accompanied by a statement of counsel that a good faith effort has been made between counsel to resolve the discovery matters at issue.

Local Civ. R. 37(E). Plaintiff merely alleges in her Motion that "Plaintiff has provided the attached Notice to Defendant, who has refused to consent to a request to voluntarily comply with the Notice" and "[t]herefore, Plaintiff has been forced to file this Motion to seek that the Court order such compliance." ECF No. 26 ¶ 9. In fact, Plaintiff's counsel emailed Defendant's counsel on July 14, 2022, stating: "[W]e will be filing a motion to have a DNA sample taken from your client. Please let us know if you will consent to providing that DNA sample. If not, please let us know if you are available on July 29 or August 5 to have that motion heard by the Court." Defendant's counsel indicated that Defendant did not consent and that she was available August 5 for the motion. The next day, July 15, 2022, Plaintiff's counsel sent Defendant's counsel the Notice and a few hours later filed the instant Motion. There was neither a conference in person or by telephone, nor had Plaintiff's counsel requested either.

Additionally, the time for Defendant to lodge an objection to the Notice had not even passed. Pursuant to the Local Rules, "an objection to any . . . application under Fed. R. Civ. P. 26 through 37, shall be served within fifteen (15) days after the service of the . . . application." Local Civ. R. 26(C). Defendant is permitted fifteen days from the date of service, alone, to object to the Notice. Plaintiff's filing of a Motion to Compel a few hours after serving the Notice is akin to asking a party if they would provide responses to discovery, even before serving the actual discovery requests themselves upon that party, then serving discovery on the party, and then, within the same day, filing a motion to compel, all before the fifteen-day deadline for filing

5

objections has even passed, let alone the actual deadline for providing responses. This improper behavior and failure to comply with this Court's Local Rules, alone, is sufficient to deny the Motion.

    **C.**    **The Request is Not Relevant to Any Party's Claim or Defenses.**

Plaintiff's request is not relevant to any party's claim or defense because a DNA sample is meaningless in a vacuum.[2]

Plaintiff fails to explain, nor can she, how she intends to compare a sample compelled from Defendant to anything. Plaintiff asserts that her "counsel will also request cooperation with the Metropolitan Police of London and judicial authorities in the U.K. under the Hague Convention and pursuant to applicable mutual assistance treaties in order to obtain DNA and other evidence in their possession that are relevant to the matters in this case." ECF No. 1 ¶ 4. However, Plaintiff's counsel has not actually done so or provided any sort of correspondence or affidavit from the London Police stating that they would provide the sample to Plaintiff and her counsel or even whether such sample still exists. Plaintiff admits that the London Police have already lost a previously-provided DNA sample. *See* ECF No. 26 ¶ 17; *see also* ECF No. 25 at 3 (noting that the London Metropolitan Police's testing lab "accidentally lost or destroyed" the DNA sample). Additionally, Plaintiff fails to allege that there is a DNA sample at The Havens that is of such a quantity and of such a quality as to allow for accurate DNA analysis. She has also not established

---

[2] Plaintiff also alleges that "DNA was obtained on the clothes of Plaintiff, as well as part of a rape kit taken by the medical clinic, The Havens." ECF No. 26 ¶ 1. She states that "[t]he DNA sample is relevant because . . . there is a previous DNA sample against which it can be compared that was taken from Plaintiff's clothing soon after the rape." ECF No. 26 ¶ 17. Firstly, Plaintiff fails to establish how DNA found on Plaintiff's clothing would establish a rape. Defendant's DNA on Plaintiff's clothes would not be surprising, as Plaintiff admitted in her Complaint that she agreed to stay with Defendant for two nights. *See* ECF No. 1 ¶ 19 ("Defendant offered his apartment, in the SoHo area of London, as an alternative and free place to stay for the extra two days. Plaintiff accepted . . . ."); ECF No. 1 ¶ 20 ("Defendant invited Plaintiff to stay in the apartment's bed and stated he would sleep on the sofa in the living room area. Plaintiff agreed to this arrangement . . . ."); ¶ 21 (noting that Plaintiff was sleeping "in the apartment's bed").

that the integrity of The Havens sample has been preserved or that it even still exists. As Plaintiff has failed to establish that she will be able to compare a sample obtained from Defendant to anything, she is not entitled to such a sample.

**B.     Plaintiff Has Not Established Good Cause.**

    1.     "Good Cause" Requires More than Mere Relevancy.

The United States Supreme Court has held that physical and mental examinations of parties under Rule 35 are "limited by Rule 26(b)'s provision that 'the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . .'" *Schlagenhauf v. Holder*, 379 U.S. 104, 117 (1964) (citing Fed. R. Civ. P. 26(b)). However, "[t]he scope of Rule 35, Federal Rules of Civil Procedure, is not coextensive with that of Rule 26, Federal Rules of Civil Procedure." *In re Mitchell*, 563 F.2d 143, 143 (5th Cir. 1977)

As the Fourth Circuit has noted, "[t]he specific requirement of good cause would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard had already been imposed by Rule 26(b)." *Guilford Nat'l Bank of Greensboro v. S. Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962). The court concluded that the addition of the "good cause" requirement indicated that there must be "greater showing of need" than under other discovery rules. *Id.* Therefore, in order to establish that she is entitled to a DNA sample pursuant to Rule 35, Plaintiff has a much higher burden than mere relevancy, which is not met by her general allegations, as detailed below.

    2.     Plaintiff Has Failed to Make a Prima Facie Showing of a Reasonable Possibility of a Match.

7

In *Schlagenhauf v. Holder*, the United Supreme Court addressed the compulsion of mental and physical examinations under Rule 35.[3] 379 U.S. 104 (1964). The matter was a mandamus proceeding challenging the district court's order requiring a defendant to submit to mental and physical examinations. *Id.* at 106. The Court held that "the movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule." *Id.* at 119. The Court concluded that "[m]ental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule." *Id.* at 120. Plaintiff has fallen far short of her duty to provide sufficient information, instead generally asserting that "[t]here is authority under the Federal Rules for ordering a DNA sample" and cites to the cases of *D'Angelo v. Potter* and *McGrath v. Nassan Health Care Corporation.* ECF No. 26 ¶ 12. However, neither of these cases that Plaintiff relies upon offers any support for her and are easily distinguishable.

In *D'Angelo v. Potter*, the plaintiff brought a sexual assault claim against a male supervisor, alleging that he raped her in the boiler room of a postal station. 224 F.R.D. 300 (D. Mass. 2004). She sought an order compelling the defendant to provide samples of his DNA for testing whether his DNA matched semen found in the boiler room. *Id.* at 301. The plaintiff had testified at her deposition that the defendant had raped her, but the defendant denied that he ever had sexual relations with her, consensual or otherwise. *Id*. A senior forensic chemist with the Postal Inspection Service had taken swabs from the boiler room and two tested positive for the presence of semen. *Id.*

---

[3] While this case did not involve the actual taking of a DNA sample, many of the district courts ruling on the issues of compelling a DNA sample look to this case for guidance and apply the principles mandated by the United States Supreme Court when interpreting Rule 35.

The defendant argued that his DNA was not "in controversy" and that "good cause" had not been "shown" for an examination of his DNA. The court began by noting that DNA testing "is an 'extreme discovery tool' in that it is only in a very few cases where, as a matter of discovery in a civil suit, litigants are required to provide such a sample." *Id.* at 303. The court next determined that the plaintiff had made "a prima facie showing of a reasonable possibility of a match" because two of the swabs that the forensic chemist took from the boiler room tested positive for semen and that the plaintiff testified as to what occurred in the boiler room and had, therefore, shown a reasonable possibility of a match. *Id.* The court held that in the instant case, the plaintiff had offered an evidentiary basis for concluding that the semen belonged to defendant. Unlike in *D'Angelo*, Plaintiff has not established that a useable sample was recovered by the London Police or that such sample still exists or that its integrity has been maintained. Absent an affidavit or other verification from the London Police that they can test Defendant's DNA against an uncompromised, useable sample, Defendant should not be forced to provide his DNA. Plaintiff's bare, unverified allegations in a complaint are woefully insufficient to require Defendant to submit his DNA.

In *McGrath v. Nassau Health Care Corporation,* the other case relied upon by Plaintiff, a female hospital employee brought a sexual harassment suit against a hospital and its male employee. 209 F.R.D. 55, 57 (E.D.N.Y. 2002). The plaintiff moved for a protective order precluding the use of a blanket purportedly stained with her menstrual blood. *Id.* at 56-57. The individual defendant cross-moved for an order directing plaintiff to produce a DNA sample. *Id.* at 57. The defendant claimed that the blanket was stained with plaintiff's blood when he and she engaged in consensual sexual intercourse on it and that it would provide a basis for impeaching the plaintiff's testimony that she and the defendant never had a consensual sexual relationship

9

(which she testified to at deposition and in her responses to interrogatories). *Id.* at 57. The court adopted the requirement "that the movant must make a prima facie showing that the DNA sample is warranted, through the introduction of sworn statements and other evidence." *Id.* at 58.

The court noted "the understanding that a DNA sample is meaningless in a vacuum—the sample must be compared to something to determine if the two DNA profiles match, and there must be some demonstrable possibility that a match will be found." *Id.* at 61. The court continued that "parties should not be permitted to engage in fishing expeditions, hoping that some useful evidence might be gleaned from obtaining the DNA sample, nor should they be allowed to use demands for DNA evidence to pressure or intimidate other parties." *Id.*

The court granted the motion to compel the DNA sample, noting that the defendant "has met his burden of showing a reasonable possibility that the DNA testing is likely to yield a match." *Id.* at 61. First, he had "shown that the evidence to be tested—the blanket—actually contains a male and a female DNA profile that can be tested against individual DNA samples" and that the "letter submitted by [the defendant] from LabCorp states that preliminary testing of the blanket revealed the presence of blood, and the presence of 'a major DNA profile consistent with a male source' and 'a major DNA profile consistent with a female source.'" *Id.* at 61-62. The court continued that "[t]he lab also stated that the DNA profiles 'can be compared to any reference sample submitted.'" *Id.* at 62. The court concluded that the defendant "has shown not only that there is something to test [the plaintiff]'s DNA sample against, but also that there is some factual basis for believing that a match may be made" and the defendant "testified at the hearing as to the specific incident that allegedly resulted in the semen and blood stains on the blanket." *Id.* at 62. Ultimately, the court found "that the defendant has shown, through his

affidavit and testimony at the hearing, a reasonable possibility that such a match may be found." *Id.* at 62.

Conversely, Plaintiff has offered no testimony in support of the bald allegations in her unverified complaint. She has not testified in a deposition. She has also not provided any evidence, much less a letter appended to an affidavit, from the entity that allegedly took the sample in London, that such a sample still exists, that it contains a DNA profile that can be tested against a DNA sample, or even that Plaintiff could be provided with the sample. Clearly, Plaintiff has fallen far short of her burden of establishing a prima facie showing of a reasonable possibility of a match.

        2.        <u>Plaintiff's Reliance on *Ashby v. Mortimer* is Befuddling and Misplaced.</u>

Plaintiff places much reliance on the case of *Ashby v. Mortimer*. In *Ashby*, a biological mother and her former husband, whose daughter was born during their marriage via artificial insemination, brought a medical malpractice action against a medical practice and her treating obstetrician, alleging that he fraudulently used his own sperm to impregnate her. *Ashby v. Mortimer*, 329 F.R.D. 650, 652-53 (D. Idaho 2019). Many years after her birth, the daughter received a notification from Ancestry.com that a DNA sample that she had submitted matched a sample submitted by the defendant. *Id.* at 653. The website predicted that there was a parent-child relationship between the two based on the samples. *Id.* This eventually led to the medical malpractice action, where the plaintiffs filed a motion to compel the defendant's "submission to a buccal (cheek) swab DNA test." *Id.*

The defendant argued that good cause could not "be established because Plaintiffs can simply rely on the Ancestry.com test." *Id.* at 654. The plaintiffs argued that there was good cause to order the defendant "to submit to a DNA test because the Ancestry.com test could not serve as conclusive evidence of paternity at trial" as "the Ancestry.com test is inadmissible evidence of

paternity under Idaho law, there is no documented chain of custody for either [the defendant]'s or [the daughter]'s DNA samples, and there is no way for an expert to evaluate Ancestry.com's results in light of the chain of custody issue." *Id.*

The court ultimately concluded that "[g]ood cause supports a DNA test because [the defendant]'s relation to [the daughter] is not, contrary to [the defendant]'s contention, available through other means." *Id.* at 655. The court elaborated:

> **Here, the Ancestry.com test does not provide conclusive proof of paternity because, *inter alia*, there is no documented chain of custody**. As such, [the defendant] could launch a variety of attacks on the competency of the Ancestry.com results at trial, including: (1) that someone else may have produced the saliva in the sample submitted under his name or in the sample submitted under [the daughter]'s name; (2) that he (or [the daughter]) did not follow the appropriate procedures for giving a sample; (3) that excessive heat, cold, age of test, or some other defect before processing by Ancestry.com degraded the accuracy of the results; or (4) that mix-ups at Ancestry.com rendered the results inconclusive.

*Id.* at 655 (emphasis added).[4] Plaintiff asserts that "[t]he instant case goes a step further—not only had Defendant voluntarily provided his DNA, he is seeking a protective order to prevent the sharing of his DNA with the exact same entity with whom he had shared his DNA in the past without objection." ECF No. 26 ¶ 15. Plaintiff continues that:

> If Plaintiff is prohibited from sharing Defendant's DNA with The Havens or otherwise comparing the DNA samples, Defendant could argue at trial that (1) the comparison was invalid as it was not made against the actual samples; (2) that one or other of the facilities either did not use the proper test, or used different tests; (3) that defects in processing by The Havens or a U.S. lab resulted in inconclusive results; or (4) that there were mix-ups in tests performed in different countries by different agencies. These precise issues were identified as problems in *Ashby*. *Id.* at 655. The court in *Ashby* ordered

---

[4] Plaintiff also relies on *Ashby* to support her proposition that "[c]learly, the voluntary provision of DNA once constitutes a waiver of any argument against providing DNA evidence." ECF No. 26 ¶ 15. Under this logic, any time law enforcement wants to obtain a DNA sample, they would merely have to establish that the person previously provided DNA in any context, such as a 23 and Me DNA Ancestry Test or even routine blood work.

12

> defendant to provide DNA for direct comparison to commercial test results, as opposed to Ancestry.com's DNA database. *Id.* Any attempt to bar Plaintiff from obtaining DNA and performing a test against the rape kit in the possession of The Havens and the London Police could prevent her from proving that the DNA samples were identical.

ECF No. 26 ¶ 16. Plaintiff's argument lacks any logical consistency and is painstakingly irrelevant. This logic would apply if Defendant was trying to get Plaintiff to rely upon a prior specimen as opposed to providing one. Plaintiff is putting the proverbial cart before the horse. Firstly, Defendant is not seeking a protective order to prevent the sharing of his DNA with the London Police—he is opposing Plaintiff's Motion in full and seeking a protective order prohibiting her from attempting to obtain his DNA at all. Secondly, Defendant is not attempting to argue that Plaintiff should rely upon a prior DNA specimen—he is asserting, correctly, that she is not entitled to a DNA sample at all. Regardless, applying the general principles of *Ashby* to this case, the tests would still be performed in different countries by different agencies. As Plaintiff's Notice and Motion are woefully deficient, it is unclear what test was used in London and what test would be used in the present matter or how the sample in London was processed or how the sample Plaintiff seeks to compel would be processed.

        3.      <u>Potential Support for Punitive Damages is Not a Proper Ground for a DNA Request.</u>

Plaintiff alleges that "[t]he existence of a DNA match would also constitute an important element for punitive damages." ECF No. 26 ¶ 13. Plaintiff fails to specify *how* the existence of a DNA match would constitute an element for punitive damages, much less an "important" one. Regardless, a DNA sample is not to be ordered pursuant to Rule 35 merely for the issue of damages. *See, e.g., Sacramona v. Bridgestone/Firestone, Inc.*, 152 F.R.D. 428, 431-32 (D. Mass. 1993) (noting, in denying a Rule 35 motion, that "defendants seek the blood test to determine future damages, not liability").

13

### D. Plaintiff Failed to Comply with the Requirements of Rule 35.

Rule 35(a)(2) provides the requirements for an order issued pursuant to Rule 35, stating that an order: "(A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and (B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2). In her Motion, Plaintiff baldly asserts that she:

> has complied with all of the requirements of Rules 34 and 35, by providing herein and by previous notice to Defendant, the person to be examined and to all parties, that specified "the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made, and [] the time for filing the report and furnishing the copies," as well as "describing in reasonable particularity each item . . . to be inspected."

ECF No. 26 ¶ 8. However, this is demonstrably false. Plaintiff asks, "that the Court enter an Order compelling Defendant to submit to the Physical Inspection and Examination, including the taking of samples for DNA testing, described in this Motion and the attached Notice." ECF No. 26 at 6. Furthermore, Plaintiff's proposed order merely provides that the Motion is granted, and that "Defendant shall present himself for the examination and taking of these samples at the office of Plaintiff's Counsel . . . on August 29. [sic] 2022, at 10:00 a.m." ECF No. 26-6 ¶¶ 1-2.

The Notice states that it is made "by and through the undersigned counsel and a suitably certified health care provider," and provides that Plaintiff "will conduct an [sic] Physical Examination of Defendant . . . *which will include* the taking of a sample of Defendant's Deoxyribonucleic acid (DNA)." ECF No. 26-1 at 1 (emphasis added). The Notice does not specify in what manner the DNA is to be taken, but only that the Notice is "for the taking of samples of Defendant's DNA for the purposes of DNA testing and comparison with DNA that was found on the clothes of Plaintiff and in Plaintiff's rape kit." ECF No. 26-1 at 1. She also fails

to specify what other purposes a physical examination would be used for other than the taking of a sample of DNA. In her Motion, she does clarify somewhat that she "seeks samples of Defendant's blood, hair, skin, urine, and a saliva swab for purposes of DNA testing and comparison with DNA that was found on the clothes of Plaintiff and in Plaintiff's rape kit." ECF No. 26 ¶ 2. Plaintiff still does not specify how these samples would be procured, who specifically would take them, or what a "skin" sample would even consist of. She also does not specify why she needs five different methods of collecting DNA. Defendant was not able to locate any case law where a Defendant was compelled to provide a skin sample, or even a urine or hair sample and Plaintiff provides no such authority, as is her burden.

Also very problematically, the Notice provides that "[t]he inspection and taking of the DNA sample will be for the purpose, *among other things*, of determining whether Defendant's DNA was found on Plaintiff's clothes and/or in Plaintiff's rape kit taken by The Havens." ECF No. 26-1 at 1 (emphasis added). Similarly, the Motion provides that "[t]he inspection will be for the purpose, *among other things*, of determining whether Defendant's DNA was found on Plaintiff's clothes and/or in Plaintiff's rape kit taken by the Havens." ECF No. 26 ¶¶ 3-4. Plaintiff does not specify what these "other things" may be, falling desperately short of the well-established "in controversy" and "good cause" requirements.

The Notice further provides that "[t]hese tests will be analyzed by one or more independent laboratories of Plaintiff's choosing." ECF No. 26-1 at 1. The Motion also similarly provides that "[t]hese tests will be analyzed by one or more independent laboratories of Plaintiff's choosing." ECF No. 26 ¶ 2. Again, Plaintiff does not specify what laboratory that she intends to use or that she has even found a laboratory that will perform the comparison that she is seeking. *See Marroni v. Matey*, 82 F.R.D. 371, 372 (E.D. Pa. 1979) ("[W]e do not believe that

15

their motion, as presented, could be granted. Rule 35(a) requires that an order for examination 'specify the time, place, manner, conditions, and scope of the examination.' Plaintiffs' general request for 'psychological testing' provides little guidance for determining the scope of any eventual examination. Furthermore, it is unclear from plaintiffs' motion who should conduct the desired examination.") (internal citation omitted). Plaintiff also improperly "seeks to have Defendant present himself for the taking of these samples at the office of Plaintiff's Counsel," as opposed to a medical office. ECF No. 26 ¶¶ 3-4. *See Smith v. Café Asia*, 724 F. Supp. 2d 125, 126-27 (D.D.C. 2010) (granting a Rule 35 motion after noting that the motion identified the doctor who would conduct the examination, his medical specialty, a proposed date for the examination, the length of the examination, and the type of examination and, additionally, that the party seeking the examination "submitted with their motion an affidavit by [the doctor] that described the nature of the examination" and that the "motion agreed to 'a neutral location to be determined by the parties'").

### E. Defendant is Entitled to a Protective Order.

The United States Supreme Court has noted that physical and mental examinations of parties under Rule 35 are limited by the provisions of the Federal Rules "permitting the district court, upon motion, to limit, terminate, or otherwise control the use of discovery devices so as to prevent either their use in bad faith or undue 'annoyance, embarrassment, or oppression.'" *Schlagenhauf v. Holder*, 379 U.S. 104, 117 (1964). Rule 26(c) provides:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . [T]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one of more of the following: (A) forbidding the disclosure or discovery.

Fed. R. Civ. P. 26(c)(1)(A). This provision "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

As noted *supra,* "DNA testing is an extreme discovery tool which is very intrusive to the targets of such discovery" and should not be used as a "fishing expedition." *Harris v. Athol-Royalston Reg'l Sch. Dist. Comm.*, 206 F.R.D. 30, 35 (D. Mass. 2002); *see also McGrath v. Nassau Health Care Corp.*, 209 F.R.D. 55 (E.D.N.Y. 2002) (directing that "parties should not be permitted to engage in fishing expeditions, hoping that some useful evidence might be gleaned from obtaining the DNA sample, nor should they be allowed to use demands for DNA evidence to pressure or intimidate other parties"). In her Motion, "Plaintiff seeks samples of Defendant's blood, hair, skin, urine, and a saliva swab for purposes of DNA testing and comparison with DNA that was found on the clothes of Plaintiff and in Plaintiff's rape kit." ECF No. 26 ¶ 2.[5] Yet, she made shockingly little effort to show why she is entitled to such extreme relief. The conclusion is that, at best, she has no support or, at worst, that she brought the motion in an attempt to use a discovery device in bad faith. This can best be demonstrated by the fact that she is seeking to compel Defendant to provide five different DNA samples in the office of Plaintiff's counsel. This can simply be for no other purpose than to embarrass Defendant, a theme throughout the litigation of this matter. There is no reason that Plaintiff would need five samples from Defendant—blood, hair, skin, urine, and a saliva swab and it is clearly improper to compel Defendant to provide such samples in the law office of Plaintiff's counsel. Plaintiff's

---

[5] Plaintiff asserts that "a DNA buccal swab represents 'only a minimal intrusion.'" ECF No. 26 ¶ 17 (citing *McGrath*, 209 F.R.D. at 61). However, Plaintiff seeks samples of Defendant's blood, hair, skin, and urine in addition to a saliva swab, so this assertion is meaningless

misuse of Rule 35 should not be rewarded; Defendant is entitled to be protective order prohibiting her from obtaining a DNA sample from him.

### III. <u>CONCLUSION.</u>

For the reasons set forth herein, Defendant Cenk Sidar requests that the Court deny Plaintiff's Motion to Obtain Physical Examination of and DNA Sample from Defendant, enter a protective order prohibiting Plaintiff from seeking a DNA sample from Defendant, award Defendant his costs and attorneys' fees, pursuant to Local Civil Rule 37(G)-(H), incurred in opposing Plaintiff's Motion, and grant such other and further relief in favor of Defendant as this Court deems just and proper.

Dated: July 29, 2022

                                          CENK SIDAR

                                          By Counsel:

_/s/ Mariam W. Tadros_
Mariam W. Tadros (VSB #75502)
REES BROOME, PC
1900 Gallows Road, Suite 700
Tysons Corner, VA 22182
(703) 790-1911
Fax No. (703) 848-2530
mtadros@reesbroome.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on July 29, 2022, a copy of the foregoing **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO OBTAIN PHYSICAL EXAMINATION OF AND DNA SAMPLE FROM DEFENDANT** was served electronically through CM/ECF to:

Thomas F. Urban II, Esq.
FLETCHER, HEALD & HILDRETH, PLC
1300 North 17th Street, Suite 1100
Arlington, VA 22209
Fax: (703) 340-1450
urban@fhhlaw.com

Walter Steimel, Jr., Esq.
STEIMEL CONNER LAW GROUP PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, DC 20004
wes@sclgrp.com

                                            Mariam W. Tadros