# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| JANE DOE | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 1:22-cv-00545 (CMH/JFA) |
| | : | |
| CENK SIDAR | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF RENEWED MOTION TO <u>REMOVE PSEUDONYM DESIGNATION</u>

Defendant, Cenk Sidar ("Defendant"), by counsel, submits the following Memorandum in Support of his Renewed Motion to Remove the Pseudonym Designation in Plaintiff Jane Doe's ("Plaintiff") Complaint, as well as enter an order requiring that refences to Plaintiff in all filings and proceedings in this matter shall be her true name, that her name is not to be redacted, and that her true name be used at trial.

## I.      BACKGROUND.

On May 12, 2022, Plaintiff filed a three-count complaint in this Court, asserting claims against Defendant for Assault & Punitive Damages (Count I), Battery & Punitive Damages (Count II), and Intentional Infliction of Emotional Distress & Punitive Damages (Count III). On May 12, 2022, Plaintiff also filed a Motion to File Complaint and Proceed Under a Pseudonym (ECF No. 4). On May 13, 2022, a Notice of Correction was added to the docket noting that the filing user of ECF No. 4 was notified to file a Notice of Hearing Date or a Notice of Waiver of Oral Argument. On May 13, 2022, Plaintiff filed a waiver of oral argument (ECF No. 5) on her Motion to File Complaint and Proceed Under a Pseudonym, which the Court granted the same day. Defendant was not given the typical fourteen days to file an opposition to Plaintiff's motion. *See* E.D. Va. Local Civ. R. 7(F)(1) ("[T]he opposing party shall file a response brief and such supporting documents as are appropriate, within fourteen (14) calendar days after service."). In granting the Motion, the Court held that "there appearing to be good cause for granting the relief requested in the Motion . . . all references to Plaintiff in all filings and proceedings in this cause shall be to 'Jane Doe' and that Plaintiff's identity shall be redacted in all filings." (ECF No. 7).

Asserting that there was no good cause for Plaintiff to be granted the use of a pseudonym designation, on June 19, 2022, Defendant filed his Motion ("Motion") to Remove Pseudonym Designation (ECF No. 19), as well as his memorandum in support (ECF No. 20). Plaintiff filed

an opposition ("Opposition") to Defendant's Motion on July 11, 2022 (ECF No. 25), to which Defendant filed a reply ("Reply") on July 18, 2022 (ECF No. 28). On July 29, 2022, the Court entered an order denying Defendant's Motion and noting that it "may be renewed at time of trial." (ECF No. 35). As discovery in this matter closed on December 9, 2022, as provided for in the parties' Joint Discovery Plan (ECF No. 29 at 1), and a jury trial is set for February 27, 2023 (ECF No. 89), Defendant now files his Renewed Motion to Remove Pseudonym Designation ("Renewed Motion").

## II.   ARGUMENT.

### A.   Legal Standard.

Federal Rule of Civil Procedure 10(a) requires that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a); *see also Doe v. Merten*, 219 F.R.D. 387, 390 (E.D. Va. 2004) (noting that Federal Rule of Civil Procedure 10(a) "embodies the presumption . . . of openness in judicial proceedings," which dates back to the English common law and is supported by the First Amendment's protections of freedom of speech and press). As this Court has noted, "[t]o allow a party to proceed under a pseudonym is a rare dispensation, as pseudonymous litigation 'undermines the public's right of access to judicial proceedings.'" *Doe v. The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 592 (E.D. Va. 2016) (quoting *Doe v. Public Citizen*, 749 F.3d 246, 273 (4th Cir. 2014)); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 (1980) ("First Amendment guarantees of speech and press, standing alone, prohibit government from summarily closing courtroom doors which had long been open to the public at the time that Amendment was adopted."). "Indeed, the right of public access to judicial proceedings has deep constitutional and common law roots." *Doe v. The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 592 (E.D. Va. 2016); *see also Doe v.*

*Public Citizen*, 749 F.3d 246, 265 (4th Cir. 2014) ("The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to the public.").

"[U]se of a pseudonym is, in effect, a partial sealing of a lawsuit that removes from public access certain aspects of the judgment proceeding." *The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d at 592. "Public access serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness." *Doe v. Public Citizen*, 749 F.3d 246, 265 (4th Cir. 2014) (quoting *Littlejohn v. Bic Corp.*, 851 F.2d 673, 682 (3d Cir. 1988)). "The public has an interest in knowing the names of the litigants, and disclosing the parties' identities furthers openness of judicial proceedings." *Public Citizen*, 749 F.3d at 273 (internal citation omitted). "In short, '[t]he people have a right to know who is using their courts.'" *Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804, 807 (E.D. Va. 2012) (quoting *Doe v. Blue Cross & Shield United*, 112 F.3d 869, 872 (7th Cir. 1997)).

Therefore, "a district court has an independent obligation to ensure that extraordinary circumstances support a request [to litigate under a pseudonym] by balancing the party's stated interest in anonymity against the public's interest in openness and prejudice that anonymity would pose to the opposing party." *Public Citizen*, 749 F.3d at 274.

The Fourth Circuit has listed several factors that should be considered when determining whether a request for anonymity should be granted by a court:

> [1] [w]hether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly-personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental

3

or private party; and, relatedly, [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). None of these five factors weighs in favor of Plaintiff being permitted to proceed under a pseudonym.

**B.      Plaintiff is Not Permitted to Proceed Under a Pseudonym Merely to Avoid Criticism and Preserve Her Privacy When She Made the Decision to Initiate This Litigation.**

First, the Court considers, "whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature[.]" *Jacobson*, 6 F.3d at 238. The Fourth Circuit has "explained that use of a pseudonym 'merely to avoid the annoyance and criticism that may attend . . . litigation . . .' is impermissible." *Public Citizen*, 749 F.3d at 265 (quoting *Jacobson*, F.3d at 238).

In regard to the first factor, Plaintiff alleged that her Complaint reveals "the sort of humiliating details that would compel the Court to maintain anonymity" and that she is "the alleged victim of a grievous and outrageous physical attack and rape, which would cause her additional trauma if her name were revealed publicly." ECF No. 4 ¶ 2. She asserted that "there is no public interest in knowing the Plaintiff's identity" and that she "seeks anonymity to protect her privacy from further assault and protect her privacy regarding the details of the assault that will be part of this case." ECF No. 4 ¶¶ 3-4. These bald statements fall far short of the types of cases where plaintiffs have been permitted to proceed under pseudonyms in litigation.

In *James*, which was the case where the five-factor test was first delineated, a patient and her husband requested to proceed anonymously in a medical malpractice and fraud action against their physician, Dr. Jacobson. *James v. Jacobson*, 6 F.3d 233, 234 (4th Cir. 1993). The plaintiffs engaged the services of Dr. Jacobson, a medical doctor who specialized in the diagnosis and

treatment of infertility, to provide artificial insemination of Mary James with the sperm of John

James. *Id.* at 235. Dr. Jacobson performed several artificial insemination procedures,

representing to the Jameses that the semen used was that of Mr. James; Mary James became

pregnant and had two children. *Id.* Approximately a decade later, the Jameses, through media

reports of criminal charges brought against Jacobson, learned that Jacobson might be the

biological father of the James children, as opposed to John. *Id.* The James parents testified, under

pseudonyms, at Jacobson's criminal trial, during which he was convicted of charges involving

"the fraudulent use of his own sperm rather than that of promised donors in impregnating

patients." *Id.* The Jameses were "[c]oncerned about the effect upon the children if they should

learn that John James was not their biological father," so they "sought professional advice." *Id.*

As a result of that advice, the Jameses revealed to their children that due to a "mix-up" in the

insemination, John James was not their biological father, but did not reveal that Jacobson almost

certainly was. *Id.* In early 1992, the James instituted the malpractice and fraud action against

Jacobson and, before filing their complaint, obtained an *ex parte* protective order permitting

them to use the pseudonyms "John James" and "Mary James." *Id.* After this order was initially

granted, the court later ruled that the Jameses could not use the pseudonyms at trial, which

resulted in them appealing the order to the Fourth Circuit. *Id.* at 236.

On appeal, the Fourth Circuit held that the district court had abused its discretion in not

permitting the Jameses to proceed anonymously because, in part, of the "risk of harm to the

children from revelation of the full circumstances of their birth." *Id.* at 241. The Court noted that

this was "revealed in affidavits of a consulting psychiatrist and a consulting psychologist filed by

the Jameses in support of their motion." *Id*. The affidavits made "the point that the specific risk

of harm to the children that should be avoided is narrowly only the risk of sudden, unplanned

revelation *at this particular time in their lives* while they are in particularly vulnerable pre-adolescence and soon after the revelation that their conception was by artificial insemination and that John James was not, as they had supposed, their biological father." *Id.* In making this ruling, the Court noted the privacy interests of the innocent non-parties, the children, which was supported by experts who submitted affidavits regarding the potential harm to the children if privacy was not maintained. Plaintiff in the present matter has made no such showing.

In *Doe v. Hallock*, an action brought pursuant to Title VII, "the plaintiff . . . sought to proceed under a pseudonym, 'Jane Doe,' in an effort to retain her anonymity." 119 F.R.D. 640, 641 (S.D. Miss. 1987).[1] The plaintiff, who also asserted state law claims for assault and battery, as well as intentional infliction of emotional distress, alleged that her former employers "sexually harassed her throughout her employment by treating her in a derogatory and humiliating manner solely because of her gender, that she was denied a promotion which ultimately went to a male employee because she refused to succumb to sexual advances by defendant Hallock, and that she was involuntarily terminated because of her gender." *Id.* at 641-42. The court noted that "plaintiff seeks to avoid disclosing her true name in order to protect herself against embarrassment and unwanted invasion of her personal privacy since the matters contained in her complaint, she charges, are private matters of an intimate personal nature." *Id.* at 643. The court, "while not unsympathetic with plaintiff's pleas for privacy, [wa]s not persuaded that the need for anonymity is so compelling as to permit nondisclosure." *Id.* The court noted that "[t]he nature of the claims charged by plaintiff in the case at bar does not involve any admission by plaintiff that she has violated the law or that she desires to engage in illegal conduct, nor does she seek to

---

[1] *Doe v. Hallock* is cited favorably by the United States District Court for the Eastern District of Virginia in both *James v. Jacobson*, 6 F.3d 233, 239 (E.D. Va. 1993) and *JL v. Polson*, 2017 WL 11500247, at *1 (E.D. Va. 2017). It is also cited in *Doe v. Alger*, 317 F.R.D. 37, 39 (W.D. Va. 2016), a United States District Court for the Western District of Virginia case that Plaintiff relied upon in her Motion. *See* ECF No. 4 ¶ 7.

challenge the validity of any governmental activity" and that "[r]ather she alleges improper conduct toward her by *private* individuals." *Id.* at 643-44.

Similarly, Plaintiff alleges that she seeks to keep private "humiliating details" and that she "seeks anonymity to protect her privacy." ECF No. 4 ¶¶ 2-4. Similarly to *Hallock*, this is insufficient. Regardless of whether these are private matters of an intimate personal nature, Plaintiff has not made any admissions that she violated the law, does not seek to challenge the validity of government activity, and is alleging improper conduct against her by a private individual.

In *JL v. Polson*, the plaintiff brought a complaint alleging "that a TSA officer struck him in the groin during a security pat-down at Dulles International Airport." *JL v. Polson*, 2017 WL 11500247, at *1 (E.D. Va. Jan. 1, 2017). The Court acknowledged that "[w]hile this incident was perhaps embarrassing to Plaintiff, it does not raise privacy concerns sufficient to warrant pseudonymous litigation." *Id.* Although the conduct underlying the suit could be characterized as "sexual battery," this did not entitle the plaintiff to proceed anonymously. *Id.* at *1. Similarly, Plaintiff's allegations do not raise privacy concerns sufficient to warrant pseudonymous litigation.

In Plaintiff's Opposition, she cited to a Seventh Circuit Court case for the proposition "that rape victims are entitled to anonymity." ECF No. 25 at 6 (citing *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997)). However, the Seventh Circuit which is not binding precedent in this Circuit in any manner, stated that "fictious names *are allowed* when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997) (emphasis added). The court also noted that "[t]he use of fictitious names is

7

disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts." *Id.* at 872. Clearly such use is permissive, not a blanket entitlement.

The next case that Plaintiff heavily relied upon in her Opposition is from the United States District Court for the Eastern District of New York in which the plaintiff brought claims that he was sexually abused by a rabbi at a Jewish school when he was a child. *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 194 (E.D.N.Y. 2006). The plaintiff alleged that Rabbi Kolko sexually abused him while he was a minor student at Yeshiva, where Kolko was employed. *Id.* at 194. The plaintiff sought to proceed anonymously in the litigation. In support, the plaintiff stated that he had been diagnosed with several psychiatric disorders, including post traumatic stress disorder, and that he would experience psychological harm if his identity was revealed in this case, "a claim supported by his treating psychiatrist," who submitted a declaration in support of the plaintiff's motion. *Id.* at 194-95. In *Kolko*, the court also noted that there were two other plaintiffs who publicly disclosed their identities, so this balanced out the fact that the rabbi's reputation was at stake and better gave him "a public forum to defend the charges of abuse." *Id.* at 196; *see also id.* at 198 ("[S]ince there are two other plaintiffs in this Court alleging similar conduct who will be proceeding under their real names, defendants will have an unfettered opportunity to present their defenses and to challenge the credibility of their accusers."). This is not similar to the present case.

Citing to the United States Supreme Court opinion *Coker v. Georgia*, Plaintiff asserted in her Opposition that "the U.S. Supreme Court has recognized the seriousness of rape." ECF No. 25 at 6. Defendant does not disagree. In fact, in *Coker*, the Supreme Court noted that it did "not discount the seriousness of rape as a crime" and that "[i]t is highly reprehensible, both in a moral

sense and in its almost total contempt for the personal integrity and autonomy of the female victim and for the latter's privilege of choosing those with whom intimate relationships are to be established." *Coker v. Georgia*, 433 U.S. 584, 597 (1977). This speaks to how the public would perceive an accused rapist, not a rape victim.

Plaintiff also attempted to rely upon the Seventh Circuit case of *Doe v. City of Chicago*. In *City of Chicago*, the plaintiff brought suit against a Chicago police officer, including claims for sexual harassment. 360 F.3d 667, 668 (7th Cir. 2004). The matter was on appeal related to the district court's grant of summary judgment, but the court noted that: "[a]s an aside, we express our concern about the plaintiff's litigating under a pseudonym." *Id.* In raising the issue *sua sponte*, the court continued that plaintiff:

> merely filed the complaint anonymously, there was no objection, and the judge conducted no inquiry into the propriety of anonymity. The judge's failure to make an independent determination of the appropriateness of the plaintiff's concealing her name was error because, as we have explained, "the use of fictious names is disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts."

*Id.* at 669-70 (quoting *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (D.R.I. Dec. 28, 1993)). The court remanded the matter back to the district court to determine whether the plaintiff could anonymously litigate the matter, even though such designation was not being challenged by the defendant. *Id.* at 674. It is unclear why Plaintiff thinks that this opinion supports her Opposition.

Plaintiff also cited to the Virginia statute concerning crime victim and witness rights for the proposition that "Virginia also recognizes crime victim rights, affording them protections of privacy and protection from intimidation, and avenues for restitution." ECF No. 25 at 6-7.

Relying on this statute, Plaintiff also asserts that "[t]he strong public policy to protect rape victims hews strongly in favor of Plaintiff retaining anonymity." ECF No. 25 at 7.

This statute, which, importantly, is within the *criminal* procedure title of the Virginia Code, says that victims and witnesses *to any crime* should be afforded certain rights, including that "their privacy is protected to the extent permissible under law." Va. Code § 19.2-11.01(A). This statute applies to *any* crime victim or witness and does not expound any policy to specifically protect rape victims. Regardless, again, this does not confer any *right* upon Plaintiff to proceed anonymously and any right to protection would be limited to the extent permissible under law, including under the *James* factors. *See also Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 422 (D. Mass. 1995) ("[T]he criminal statutes cited by plaintiff apply to situations where the government chooses to prosecute a case, and offers anonymity to a victim who does not have a choice in or control over the prosecution. In the civil context, the plaintiff instigates the action, and, except in the most exceptional cases, must be prepared to proceed on the public record. The Court is cognizant of the defendants' concerns, and finds that it would be fundamentally unfair to allow plaintiff to make sure serious allegations against them without standing, as they must, in a public forum.").

### C.     Plaintiff Does Not Establish That Revealing Her Identity Would Pose Harm to Her.

Second, the Court considers "whether information poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties[.]" *Jacobson* 6 F.3d at 238. Regarding the second factor, Plaintiff alleges that she "works in the defense industry and attends military and defense conferences worldwide" and that "[i]dentifying her as a victim of sexual assault and battery would subject her to ridicule and risk, especially when working in certain foreign venues, and undermine her credibility furthering the damage she

10

suffered from Defendant's initial brutal sexual assault." ECF No. 4 ¶ 5. She alleges that "[s]he

does not seek to protect her anonymity to avoid criticism or embarrassment, she does so to

protect her business reputation and insulate her from retaliation or harm from other members of

the industry," leading her to conclude that "these facts overwhelmingly meet the second *James*

factor." ECF No. 4 ¶ 5. These underwhelming facts do *not* meet the second *James* factor. *See*

*Doe v. Public Citizen*, 749 F.3d 246, 265 (4th Cir. 2014) ("An unsupported claim of reputational

harm falls short of a compelling interest sufficient to overcome the strong First Amendment

presumptive right of public access. The district court erred by concluding otherwise.").

Plaintiff's Opposition also asserted:

> Plaintiff is also concerned for her personal safety if her identity is
> revealed. She currently works in government and defense sectors
> worldwide, with many of those projects based in the Middle East.
> As is demonstrated below, female rape victims are harassed and
> subject to severe legal and other sanctions when identified in certain
> Middle Eastern countries. Revealing her identity will subject her to
> great risk of personal harm and will serve no purpose other than to
> cause her additional emotional harm from having to discuss this
> matter with family and friends and physical harm of reprisals in the
> Middle East.

ECF No. 25 at 3. She further asserts that she "works in governmental and military contracting

worldwide, including in the Middle East" and that "[i]t is a well-documented fact that women

who have been raped are subjected to ridicule, abuse, arrest, and prosecution in the Middle East."

ECF No. 25 at 8.

In support of this proposition, Plaintiff cites to a January 2019 *Frontiers in Psychology*

article, specifically quoting the language: "Victims of sexual assault in many Middle Eastern

communities are punished even outcast by their families, or must marry their rapists in order to

restore honor to their families." ECF No. 25 at 8 (quoting ECF No. 21-1 at 15). However, she

does not allege that she lives in the Middle East or that she has a Middle Eastern family. *See,*

11

*e.g.,* ECF No. 1 ¶ 6 ("Plaintiff is a natural person and a domiciliary of the Commonwealth of Virginia."). Furthermore, the *Frontiers in Psychology* article generally is not focused on sexual assault in Middle Eastern countries. Instead:

> This paper provides a comprehensive review of the research literature on victim blame in acquaintance rape cases, highlighting inconsistencies and drawing particular attention to area of research in need of further exploration. Specifically, we review the commonly studied individual (perceiver) facts that influence victim blaming, as well as common situational (target) factors included or manipulated within sexual assault scenarios. Our review reveals many inconsistent findings and interactions between perceiver and scenario factors. In an effort to make sense of these complex interactions and inconsistent findings, we suggest a need for more transparency in describing the scenarios used in research on victim blaming in sexual assault cases and greater empirical attention to sociocultural factors that may influence blaming tendencies.

ECF No. 24-1 at 1. Instead Plaintiff cites to the single sentence in the article that refers to sexual assault in Middle Eastern communities, which is a one-sentence summary of a 1998 article, in the background portion of the article on "Rape Culture." Plaintiff did not even take the time to cite to, or probably even review, the article that actually discussed this topic.

Plaintiff also cites to an *Asia Times Online* article, quoting the portion that reads: "in some countries such as the United Arab Emirates, rapists can face the death penalty, but sex outside marriage, or *zena*, is also a serious crime, and women who have reported sexual assaults have then been arrested themselves." ECF No. 25 at 8 (quoting ECF No. 24-2). This article is referring to people who report their sexual assault to Middle Eastern authorities after the sexual assault happens in the Middle East. Plaintiff did not report any sexual assaults in the Middle East or to any Middle Eastern authorities. Rather, she reported to London authorities that she was allegedly sexually assaulted in London and then brought claims in the United States.

Regardless of the inapplicability of these articles, they are an improper attempt to admit expert testimony as hearsay and lack any foundation. "Under Virginia law, issues 'beyond the realm of common knowledge and experience of a lay jury' generally require expert testimony" and "[t]he expert testimony rule applies in diverse settings." *Benedict v. Hankook Tire Co. Ltd.,* 286 F. Supp. 3d 785, 791 (E.D. Va. 2018) (quoting *Beverly Enters.-Va., Inc. v. Nichols*, 441 S.E.2d 1, 3 (Va. 1994)). "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. The evidence that Plaintiff is attempting to introduce—that victims of sexual assault in the Middle East are subject to assault and arrest in the Middle East—is beyond the realm of common knowledge and would require expert testimony. However, the articles she attempts to introduce are hearsay that, *inter alia*, lack any sort of foundation. Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Plaintiff is attempting to rely on the articles, written by authors who are not submitting affidavits and who presumably do not even know who Plaintiff is, for the truth that women in the Middle East who are sexually assaulted can be arrested themselves. Somehow, she also makes the leap that women who are sexually assaulted in London and pursuing civil claims against the purported assailant in the United States will also be subject to arrest in the Middle East if they happen to travel there. This is quite a leap.

Plaintiff concluded that she "is rightfully afraid of the consequences if the fact that she was raped becomes publicized, especially in countries where she works and visits regularly," and that "[i]n light of her own personal experiences and well documented research and reporting, this

fear is fully justified." ECF No. 25 at 8. The scintilla of support that Plaintiff cobbled together after a quick internet search is a far cry from "well documented research and reporting."

> **D.      Both the Third and Fourth Factors Weigh Against Plaintiff, as She is Not a Minor and Defendant is a Private Party.**

Plaintiff alleges that the "third and fourth factors" of the *James* test are "inapplicable." ECF No. 4 ¶ 6. This is inaccurate and misleading – both factors *are* clearly applicable, but just do not weigh in Plaintiff's favor. The fact that they favor Defendant does not make them inapplicable.

As for the third factor, the Court considers "the ages of the persons whose privacy interests are sought to be protected[.]" *Jacobson*, 6 F.3d at 238. "Courts are more willing to allow parties to proceed anonymously in order to protect the privacy rights of children." *Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804, 809 (E.D. Va. 2012) (quoting *Doe v. N.C. Cent. Univ.*, 1999 WL 1939248, at *4 (M.D.N.C. April 15, 1999)).

Plaintiff states that she was thirty-six-years old at the time of the alleged attack, meaning that she is now at least forty years old. ECF No. 1 ¶ 14. This makes her far from a child. Plaintiff is not a child who is entitled to special protection. *See, e.g., Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804, 809 (E.D. Va. 2012) (denying the plaintiff's request to proceed under a pseudonym and noting "Plaintiff does not plead that he is an age that would favor allowing him to proceed without disclosing his legal name").

Fourth, the Court considers "whether the action is against a governmental or private party[.]" *Jacobson*, 6 F.3d at 238. This is because "[c]ourts are more likely to grant a plaintiff permission to anonymously bring suit against a governmental entity than a private entity because 'an action against a private party can result in damage to the defendant's reputation as well as economic harm' in ways that do not raise similar concerns in civil actions against the

14

government." *Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804, 809 (E.D. Va. 2012)

(quoting *Doe v. Merten*, 219 F.R.D. 387, (E.D. Va. 2004)).

Plaintiff asserts that in *Doe v. Virginia Polytechnic Institute & State University*, "the

Court determined that the third *James* factor is crucial when a party is underage but otherwise

neutral when they are not." ECF No. 25 at 9. However, this is certainly not what the Western

District of Virginia Court held. This is another case in which the plaintiff who sought to proceed

anonymously was the *alleged sexual assailant. See Doe v. Va. Polytechnic Inst. & State Univ.*,

2022 WL 972629, at *1 (W.D. Va. March 30, 2022). Plaintiff was a student at the university and

a female accused him of sexual assault. *Id.* A student conduct hearing was held and the plaintiff

was dismissed from the university. *Id.* He brought claims against the university, as well as some

of the people involved in the disciplinary process, for violations of his procedural due process

rights. *Id.* Regarding the third factor, the court noted that "the age of the female student who

made the accusation against Doe is unknown" and that "identifying Doe increases the chances

that the female student also will be identified and if she was a minor or very young adult when

she filed her complaint against Doe, identifying him could bring unwanted attention to her." *Id.*

at 3. Therefore, "[o]n balance, the court finds Doe's age to be a neutral factor in deciding

whether he should proceed under a pseudonym." *Id.* It is undisputed that both Plaintiff and

Defendant in the present matter are adults so this case weighs against Plaintiff proceeding under

a pseudonym.

In *Cabrera*, a case heavily relied upon by Plaintiff in her Opposition, the court noted that

"[w]here victims are not minors, courts are generally less inclined to let the alleged victim

proceed in litigation under a pseudonym" and that "[h]ere, the plaintiff was not a minor at the

time of the incident . . . so *this factor weighs against allowing the plaintiff to proceed*

*anonymously.*" *Doe v. Cabrera*, 307 F.R.D. 1, 7-8 (D.D.C. 2014) (emphasis added); *see also*

*W.M. v. Braskem Am., Inc.*, 2020 WL 1492544, at *2 (S.D. W. Va. Mar. 26, 2020) ("Plaintiff's

age tips in favor against anonymity; while the Complaint and instant Motion are silent as to the

issue, it appears he is an adult who had been employed since at least 2013."); *Doe v. De Amigos*,

2012 WL 13047579, at *2 (D.D.C. April 30, 2012) ("Plaintiff was eighteen at the time of the

alleged sexual assault and at least eighteen at the time she filed the complaint in this action, so

she was an adult under District of Columbia law. This weighs against anonymity.") (internal

citation omitted).

In regard to the fourth factor, Plaintiff admits that "[t]his action is between private

parties, and not against a government or public entity." ECF No. 25 at 9. This is where the

analysis should end. However, for some reason, Plaintiff thinks that "[t]his factor would only

weigh against Plaintiff if there was any risk of harm to the Defendant's reputation that would

offset Plaintiff's need for anonymity." ECF No. 25 at 9. Relying again on *Virginia Polytechnic*

*Institute & State University*, Plaintiff argues that this factor is "neutral in this case." ECF No. 25

at 9. The *Virginia Polytechnic Institute* court did find that the fourth factor "weighs neither in

favor nor against allowing Doe to proceed anonymously," but that was because "although Doe

names individual defendants, he is suing them only in their official capacities." *Doe v. Va.*

*Polytechnic Inst. & State Univ.,* 2022 WL 972629, at *3 (W.D. Va. March 30, 2022). This

somehow led Plaintiff to conclude that "[l]ifting the veil of anonymity only harms Plaintiff,

extends and amplifies the emotional toll this has taken on her, adds an additional layer of

financial burden in responding to Defendant's motion at this late stage in their litigation history

and risks exposing her to new physical, mental and financial harm." ECF No. 25 at 9.

Also in relation to the fourth factor, the *Cabrera* court, again, noted that "[i]n assessing whether pseudonymous litigation is appropriate, courts must also consider whether an accused defendant is a governmental entity or a private party" and, as a result, "[t]his factor weighs against allowing the plaintiff to use a pseudonym because the defendant is a private litigant, who undoubtedly has concerns about his reputation." *Id.* at 8; *see also W.M. v. Braskem Am., Inc.*, 2020 WL 1492544, at *2 (S.D. W. Va. Mar. 26, 2020) ("The fourth factor also weighs against anonymity, as this action is brought against a private party and not a governmental entity."); *Doe v. De Amigos*, 2012 WL 13047579, at *3 (D.D.C. April 30, 2012) ("Defendant challenging the use of pseudonym in this action is a private corporation . . . . This factor also weighs against anonymity.").

Despite Plaintiff's attempts to muddy the waters and conflate issues with baseless allegations and inflammatory language, it is crystal clear that both the third and fourth *James* factors weigh in favor of Plaintiff not being to proceed anonymously because both Plaintiff and Defendant are adults and they are both private parties.

### E.    Basic Fairness Requires that Plaintiff's Identity Be Revealed in This Matter.

Fifth, the Court considers "the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously." *Jacobson*, 6 F.3d at 238. Plaintiff asserts that permitting her "to proceed anonymously will cause Defendant no unfairness, harm or detriment." ECF No. 4 ¶ 6. However, this is far from true.

"When parties 'call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials.'" *Doe v. Public Citizen*, 749 F.3d 246, 271 (4th Cir. 2014) (quoting *Union Oil Co. of. Calif. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000)). "[C]ivil actions against private parties expose them to the risk of

reputational and economic harms." *Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804, 810 (E.D. Va. 2012).

In *Doe v. The Rector & Visitors of George Mason University*, Plaintiff Doe brought an action against George Mason University following a disciplinary process that he asserted was constitutionally-inadequate, which resulted in his expulsion after he was found responsible for sexual misconduct." *Id.* at 585. The Court noted that "Plaintiff has been accused of sexual misconduct, the mere accusation of which, if disclosed, can invite harassment and ridicule." 179 F. Supp. 3d 583, 593 (E.D. Va. 2016). The Court noted that "it is possible that plaintiff could be targeted for 'retaliatory physical or mental harm' based on the accusations alone." *Id.* (quoting *James*, 6 F.3d at 238). The Court recognized that "most litigation entails embarrassment of some form for one or both parties." *Id.* The Court noted that "some potential for embarrassment or criticism may result . . . does not justify removing litigation materials from public access." *Id.* However, in this mater, "what justifies the use of pseudonyms here is plaintiff's status as an accused perpetrator of sexual misconduct—a rapist." *Id.* The Court that continued that "[i]f plaintiff is ultimately found not responsible" as to the sexual misconduct allegations, "then he should not have his name forever associated in the public mind with an accusation that carries a significant social stigma." *Id.* at 594. The Court concluded that "this is a case in which the nature of the accusations against plaintiff are sufficiently severe that they rise to the level of an extraordinary circumstance in support of the use of a pseudonym." *Id.* (internal quotation and citation omitted). Defendant has been accused of sexual misconduct—the mere accusation of which can invite harassment and ridicule. The Court permitted the accused rapist to proceed under a pseudonym because of the potential harm of the label of "accused rapist." As such,

Defendant's reputation is clearly at stake; if Plaintiff did not afford him the opportunity to proceed under a pseudonym, she should not be permitted to.

Plaintiff conceded *Doe v. Rector & Visitors of Georgia Mason University* is the closest to the instant case, and that the Court "*granted* Plaintiff's request for pseudonymity." ECF No. 25 at 5. However, Plaintiff fails to mention that the *plaintiff* was the alleged rapist, not the victim, in that case. This fully supports Defendant's position that he has been harmed by having his name in the public  and that Plaintiff should not be given anonymity when he is not afforded the same privileges.

In *Doe v. University of Rhode Island*, a matter in which a plaintiff alleged that she was sexually assaulted and sought to proceed under a pseudonym, the court noted that:

> While I am sympathetic to plaintiff's quest for privacy, I do not find her situation is so compelling that nondisclosure is appropriate. It must be remembered that plaintiff is a victim and not the perpetrator of a violent, abusive and criminal act. The nature of plaintiff's claim does not involve any admission on her part that she has or will be engaged in any illegal activity, that she has violated the law or that she willingly engages in unaccepted sexual practices.

*Doe v. Univ. of R.I.*, 1993 WL 667341, at *3 (D.R.I. Dec. 28, 1993).

In *Southern Methodist University Association of Women Law Students v. Wynne & Jaffe*, four female lawyers, seeking to proceed anonymously, brought Title VII sex discrimination cases. 599 F.2d 707, 708-09 (5th Cir. 1979).[2] The court began by noting that "[t]he mere filing of a civil action against other private parties may cause damage to their good names and reputation and may also result in economic harm." *Id.* at 713. The law firms that were defendants in the matter stood "publicly accused of serious violations of federal law," so "[b]asic fairness dictates

---

[2] *Southern Methodist University Association of Women Law Students v. Wynne & Jaffe* is cited favorably by the United States District Court for the Eastern District of Virginia in *James v. Jacobson*, 6 F.3d 233, 239 (E.D. Va. 1993).

that those among the defendants' accusers who wish to participate in this suit as individual party plaintiffs must do so under their real names." *Id.* The court found that the plaintiffs faced "no greater threat of retaliation that the typical plaintiff alleging Title VII violations, including the other women who, under their real names and not anonymously, have filed sex discrimination suits against large law firms." *Id.* Therefore, the court concluded that the Title VII plaintiffs could not sue under fictious names. *Id.* So too does basic fairness require Plaintiff to proceed under her real name if she wishes to lodge serious allegations against Defendant.

In *Candidate No. 452207 v. CFA Institute*, a candidate for chartered financial analyst ("CFA") certification brought an action for monetary, injunctive, and declaratory relief against the organization that developed and administered the exam, claiming that the organization falsely determined that he had cheated on his exam; the candidate sought to proceed anonymously. 42 F. Supp. 3d 804, 805-06 (E.D. Va. 2012). The Court denied the motion, determining that "Plaintiff does not plead a substantial privacy right or a substantial risk of openness in judicial proceedings." *Id.* at 807. Going through the *Jacobson* factors, the Court noted that the plaintiff merely had "an interest in avoiding the embarrassment and exposure to public scrutiny that commonly attend litigation," that the plaintiff was an adult, and that the plaintiff's suit "is against a private party and poses a risk to that party's reputation such that basic fairness requires the disclosure of Plaintiff's identity in connection with the suit." *Id.* at 812. The Court noted that "[g]iven the risks Plaintiff's suit poses to CFA Institute's reputation, basic fairness dictates that Plaintiff JA, as the Institute's accuser, advance its suit under his real and full legal name." *Id.* at 810. Furthermore, "permitting Plaintiff to assert his claims against the Institute without having to disclose his name would invite meritless lawsuits from other CFA candidates against whom the Institute has taken disciplinary action, offering them a forum to tarnish the reputation of the

Institute without risk of harm to their own reputation." *Id.* Given the risks that Plaintiff's suit poses to Defendant's reputation, basic fairness requires the disclosure of Plaintiff's identity in connection with this suit.

In *Doe v. Hallock*, the court noted that it "does not wish to minimize the significance of the plaintiff's fears of humiliation, embarrassment, and reprisal, but nevertheless concludes that plaintiff, if she desires to proceed with this lawsuit, must reveal her true identity as a matter of basic fairness and consistent with the policy of disclosure of parties' identities." 119 F.R.D. 640, 644 (S.D. Miss. 1987).

Plaintiff asserted that "Defendant has described no unfairness to him in maintaining Plaintiff's anonymity." ECF No. 25 at 10. This could not be further from the truth. These issues are addressed in a case from the District Court for the Southern District of New York.[3] In *Doe v. Shakur*, the District Court for the Southern District of New York addressed the "difficult question of whether the victim of a sexual assault may prosecute a civil suit for damages under a pseudonym." 164 F.R.D. 359, 360 (S.D.N.Y. 1996). The court ultimately held:

> The present case is a difficult one. If the allegations of the complaint are true, plaintiff was the victim of a brutal sexual assault. Quite understandably, she does not want to be publicly identified and she has very legitimate privacy concerns. On balance, however, these concerns are outweighed by the following considerations.
>
> First, plaintiff has chosen to bring this lawsuit. She has made serious charges and has put her credibly in issue. Fairness requires that she be prepared to stand behind her charges publicly.
>
> Second, this is a civil suit for damages, where plaintiff is seeking to vindicate primarily her own interests. This is not a criminal case where rape shield laws might provide some anonymity to encourage victims to testify to vindicate the public's interest in enforcement of our laws . . . .

---

[3] Throughout her Opposition, Plaintiff relied heavily upon the Eastern District of New York case *Doe No. 2. v. Kolko.* Utilizing her logic, a Southern District of New York case should be equally persuasive.

> Third, [defendant] has been publicly accused. If plaintiff were permitted to prosecute this case anonymously, [defendant] would be placed at a serious disadvantage, for he would be required to defend himself publicly while plaintiff could make her accusations from behind a cloak of anonymity.

*Id.* at 361. Plaintiff asserts that she "is a rape victim" and "if rape victims like her are required to disclose their anonymity it will serve as a caution note [sic] to other rape victims and be viewed as another tool of retaliation by Defendants [sic]." ECF No. 25 at 6.[4] The *Shakur* court also noted that "[i]t may be, as plaintiff suggests, that victims of sexual assault will be deterred from seeking relief through civil suits if they are not permitted to proceed under a pseudonym" and "[t]hat would be an unfortunate result . . . however, plaintiff and others like her must seek vindication of their rights publicly." *Id* at 362; *see also Doe v. Hartz*, 52 F. Supp. 2d 1027, 1048 (N.D. Iowa 1999) (noting, in the context of a sexual assault case, that the "court considers it appropriate here to weigh the speculative nature of the potential harm to Doe from revealing her identity against the very real embarrassment her accusations have already caused the defendants").

Given the risks that Plaintiff's suit poses to Defendant's reputation, basic fairness requires the disclosure of Plaintiff's identity in connection with this suit.

### F.   Plaintiff Has Not Demonstrated That She is Risking Irreparable Harm by Removing the Pseudonym Designation.

Plaintiff alleged in her Opposition that in *Doe v. Alger*, a Western District of Virginia case, "the court weighed a sixth factor, that is, the Plaintiff's identity, if made public, would cause her irreparable harm." ECF No. 4 ¶ 7. Plaintiff continues that her "chosen profession

---

[4] Plaintiff also relied on the Southern District of West Virginia case of *W.M. v. Braskem America, Inc.*, 2020 WL 1492544 (S.D. W. Va. Mar. 26, 2020). In *W.M.*, the plaintiff sought to proceed using his initials to keep private the results of a drug test that he alleged was improperly disclosed. *Id.* at 2. Importantly, the court noted that "Defendant has not even opposed Plaintiff's motion." *Id.* at 2. In the present matter, Defendant is opposing Plaintiff's use of a pseudonym.

exposes her to enough risk—that risk does not need to be amplified by her identity being made public" and she "needs not be victimized further while pursing a remedy for her sexual assault." ECF No. 4 ¶ 7.

In *Doe v. Alger*, a male student brought a § 1983 action against a university and university officials, alleging that his suspension for five and a half years for sexual misconduct with a female student violated his rights under the Due Process Clause. 317 F.R.D. 37, 38 (W.D. Va. 2016). The male student moved for leave to proceed under a pseudonym and for a protective order prohibiting the use of his real name. *Id.* at 39. After proceeding through the *James* factors, the court noted "Doe argues that there is another factor relevant to this case that weighs in favor of anonymity—irreparable harm to his name." *Id.* at 42. The Court concluded that after weighing all of the factors, "Doe's privacy interest outweighs the presumption of openness in judicial proceedings and that he may thus proceed anonymously in this case" and found "good cause to protect Roe and the other students involved in the disciplinary proceedings, and so the use of their real names will be prohibited as well." *Id.* Again, this was a matter in which both parties were permitted to proceed anonymously—Plaintiff in the present matter did not provide Defendant with that opportunity and, furthermore, has failed to demonstrate that she would suffer from irreparable harm from removing the pseudonym in this case.

G.     **In Her Opposition, Plaintiff Failed to Rely on Case Law that is Binding on this Court.**

In her Opposition, Plaintiff argued that the "cases cited by Defendant are inapposite" and "do not address the anonymity of rape victims." ECF No. 25 at 4.  Plaintiff asserted that "[t]he instant case is a rape case, and cases which address rape and sexual misconduct are the only ones relevant to Defendant's Motion." ECF No. 25 at 5. However, Plaintiff did not point to any binding case law in this circuit, or cases in the Fourth Circuit generally, to rely on her claims. While there

may be no "rape victim" cases in the Fourth Circuit, there are plenty of cases, as discussed throughout Defendant's Memorandum, that discuss the principles behind the *James* factors. The application of the principles that the Fourth Circuit has elaborated upon is much more applicable to the present case in the Eastern District of Virginia as opposed to "rape victim" cases in other jurisdictions with different standards.[5] Regardless, the cases that Plaintiff attempts to rely upon do not support her claims.

The first case that Plaintiff attempts to rely upon in her Opposition is *Doe v. Cabrera*, a United States District Court for the District of Columbia opinion. ECF No. 25 at 5. In *Cabrera*, a plaintiff brought a civil action against the defendant for allegations of assault, battery, and intentional infliction of emotional distress and sought to proceed under a pseudonym. 307 F.R.D. 1, 2 (D.D.C. 2014). The court found that "the public disclosure of the plaintiff's true identity is very likely to result in psychological trauma," a finding, based in part, by the plaintiff's submission of an affidavit "by a licensed clinical social worker, with over ten years of experience, who has evaluated the plaintiff." *Id.* at 7 n.10. The Plaintiff here did not submit any such evidence.

Finally, Plaintiff failed to note that the *Cabrera* court held that if the matter proceeded to trial, the plaintiff would not be allowed to use a pseudonym. *Id.* at 10 n. 15 ("It is not difficult to appreciate that jurors may infer that the Court has an opinion about the harm the plaintiff has allegedly suffered by its decision to permit the plaintiff to conceal her true identity. The Court cannot afford the plaintiff that potential advantage at the expense of the defendant, who like the plaintiff is also entitled to a fair trial.").

---

[5] In her Opposition, Plaintiff insinuated that this Court should give less weight to the Fourth Circuit case *Doe v. Public Citizen* because it was *criticized* in the *District of Columbia Circuit Court*, which is completely separate from the Fourth Circuit. ECF No. 25 at 4. Plaintiff further brings attention to the fact that *Doe v. Merten*, an Eastern District of Virginia case, was cited in contradiction by an opinion issued by the *Attorney General of Texas*. ECF No. 25 at 4. Defendant is not going to waste this Court's time by distinguishing this clearly irrelevant District of Columbia Circuit Court case and completely inapplicable opinion issued by the Attorney General of Texas.

Next, Plaintiff relies upon *Doe v. De Amigos, LLC*, another case from the United States District Court for the District of Columbia. In *De Amigos*, the plaintiff alleged that she was sexually assaulted after being served underage at a venue owned and operated by the defendant. *Doe v. De Amigos*, 2012 WL 13047579, at *1 (D.D.C. April 30, 2012). In that case, the reputational concerns against the defendant were different because the defendant was merely accused of serving alcohol to an underage individual, not of committing rape. *See id.* at *3 ("Here, the defendant challenging plaintiff's motion is not the alleged attacker, but the venue that allegedly served her alcohol. Thus, the stigma that the courts feared would attach to the defendants in those cases is not of particular concern here."). Plaintiff also relies on *Doe v. Evans*, an Eastern District of Pennsylvania case in which alleged sexual assault victims brought civil rights claims against the Commissioner of the Pennsylvania State Police. 202 F.R.D. 173, 175 (E.D. Pa. 2001). The *Evans* plaintiff brought claims against the government, as opposed to a private entity.

## III.   <u>CONCLUSION.</u>

For the reasons set forth herein, Defendant Cenk Sidar requests that the Court grant his Renewed Motion to Remove Pseudonym Designation, enter an order requiring that references to Plaintiff Jane Doe's in all filings and proceedings in this cause shall be her true name, that her identity is not to be redacted in all filings, that her true name be used at the upcoming trial, and grant such other and further relief in favor of Defendant as this Court deems just and proper.

Dated: December 30, 2022

CENK SIDAR
By Counsel:

_____

Mariam W. Tadros (VSB #75502)
REES BROOME, PC
1900 Gallows Road, Suite 700
Tysons Corner, VA 22182
(703) 790-1911
Fax No.  (703) 848-2530
mtadros@reesbroome.com
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 30, 2022, a copy of the foregoing
**DEFENDANT'S MEMORANDUM IN SUPPORT OF RENEWED MOTION TO
REMOVE PSEUDONYM DESIGNATION** was served electronically through CM/ECF to:

Thomas F. Urban II, Esq.
FLETCHER, HEALD & HILDRETH, PLC
1300 North 17th Street, Suite 1100
Arlington, VA  22209
Fax: (703) 340-1450
urban@fhhlaw.com

Walter Steimel, Jr., Esq.
STEIMEL CONNER LAW GROUP PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, DC  20004
wes@sclgrp.com

_____

Mariam W. Tadros