IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| JANE DOE )<br>　A Domiciliary of the )<br>　Commonwealth of Virginia )<br>　　　　　　　　　　　　　　　　　　 )<br>　　Plaintiff, )<br>　　　　　　　　　　　　　　　　　　 )<br>v. )<br>　　　　　　　　　　　　　　　　　　 )<br>CENK SIDAR )<br>　　　　　　　　　　　　　　　　　　 )<br>　　Defendant. ) | Civil Action No. 1:22-cv-00545<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S RENEWED MOTION TO REMOVE PSEUDONYM DESIGNATION**

Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys, files this Opposition to Defendant's Renewed Motion to Remove Pseudonym Designation ("Motion"). *ECF No. 65*. Specifically, Defendant Cenk Sidar ("Sidar") once again demands that this Court remove the designation "Jane Doe" that has prevented Plaintiff from being traumatized a second time by Defendant's rape of her.

**I.      Background**

Defendant's Motion is just one more example of the manner that he and his counsel have litigated this lawsuit – attempting to make this lawsuit as expensive as possible for Plaintiff knowing that she has significantly fewer financial resources than does Mr. Sidar. Sidar hopes to make this litigation as painful as possible in order to coerce a settlement that does not fairly compensate Plaintiff for her injuries.  Since current counsel joined this case, counsel has filed frivolous motions, meritless objections, and a baseless appeal to the Fourth Circuit.  Moreover, Sidar has refused to comply with his obligations to participate in good faith in discovery, not

only refusing to provide a DNA sample as required by an Order of this Court, but also failing to provide most of the written discovery requested by Plaintiff. Plaintiff has not had the financial resources to fight Sidar on all of these fronts and still pursue her case against him in order to see that justice is done regarding his rape of her.

This case was originally filed in Fairfax County Circuit Court on September 13, 2019 with a motion to have Plaintiff's name be replaced with a pseudonym filed concurrently with the Complaint. For over two years, Sidar's previous counsel never complained about the use of a pseudonym. Current counsel entered the case in October 2021 and defended Sidar for over 6 weeks before Plaintiff entered a non-suit in late November 2021, with Plaintiff's counsel announcing that they would refile the case in federal court so that they could obtain the DNA evidence they needed for their case. During that six week period, counsel never complained about the pseudonym designation. For the six months from the non-suit until the case was refiled in this Court, Sidar's current counsel never made any request nor raised any objection to the idea that the case would be filed with Plaintiff using a pseudonym. It was only after Sidar's counsel realized that the removal of the pseudonym could be used as leverage to attempt to obtain a better settlement for Sidar did counsel object to the use of the pseudonym.

The fact that Sidar has taken extreme efforts to prevent Plaintiff from obtaining a DNA sample from him so that she can compare it to the sperm DNA that was taken from her vaginal area the morning of the rape is strong evidence that Sidar knows that the DNA will be a match. Much like the assertion of the Fifth Amendment right to silence in a civil case, his refusal to comply with the Order entered by Magistrate Judge Buchanan on August 5, 2022 is a damning indictment that Sidar clearly raped Plaintiff on September 17, 2019. Sidar's refusal to provide

2

the DNA sample should be treated as seriously as a spoliation of evidence. Plaintiff notes that Defendant has also refused to provide his cell phone, text and social media records, both before this Court and in Fairfax County, and has never responded over two years to several spoliation demand letters from Plaintiff.

This Court denied Sidar's previous attempt to remove the pseudonym designation and expose Plaintiff's name in this case. *ECF 36.* The arguments supporting continued use of the pseudonym and the balance of the equities for such a designation have only become more compelling in favor of Plaintiff since that Order.

**II. Argument**

Sidar's Renewed Motion merely regurgitates almost verbatim the arguments that he made when his motion was denied in July 2022. Sidar provides no explanation why it is necessary to remove the pseudonym at this time. As explained below, each of the factors that supported continuing the use of the pseudonym back in July are only stronger now.

**A.     Standard and Balance of Interests**

**1.     General Standard; Five Part Test**

While the Federal Rules of Civil Procedure requires identification of parties, in certain circumstances a party may be afforded the protection of anonymity if that party meets the five-part test set forth in *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). After a review of various criteria discussed in other circuits, the *James* court chose the following five criteria that "have relevance to this case…." *Id*. These factors include

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory

3

>physical or mental harm to the requesting party or even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Numerous courts have applied the *James* test to either grant or deny requests for anonymity. The cases cited by Defendant are inapposite. They do not address the anonymity of rape victims. The cases cited by Defendant, for example, relate to Title VII claims (*Doe v. Hallock*, 119 F.R.D. 640 (S.D. Miss. 1987); *Southern Methodist Univ Ass'n v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979)); Section 1983 claims (*Doe v. Alger*, 317 F.R.D. 37 (W.D. Va. 2016)); a TSA pat-down (*JL v. Polson*, 2017 WL 11500247 (E.D. Va. Jan. 1, 2017)); risk of harm to a company related to an infant death from a defective product (*Co. Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014)(*criticized in Roe v. Doe*, Civil Action No. 18-666 (CKK) (D.D.C. Aug. 9, 2018)); public interests in government litigation or challenging laws or regulations (*Doe v. Merten*, 219 F.R.D. 387 (E.D. Va. 2004) (*cited in contradiction by Opinion No. GA-0699* (Ops. Tex. Atty. Gen. Mar. 19, 2009), at fn. 2); and cheating on exams (*Candidate # 452207 v. CFA Institute*, 42 F. Supp. 3d 804 (E.D. Va. 2012)).

The closest case to the instant one cited by Defendant is *Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583 (E.D. Va. 2016) in which the court *granted* Plaintiff's request for pseudonymity specifically citing that sexual misconduct carries a stigma, is a "matter of sensitive and highly personal nature" and is likely to result in "'retaliatory physical or mental harm' based on the accusations alone." *Rector*, 179 F. Supp. 3d at 593, *citing James*, 6 F.3d at 238. The instant case is a rape case, and cases which address rape and sexual misconduct are the

4

only ones relevant to Defendant's Motion. The legal standard is the application of the *James* factors to rape cases.

B.     **Balancing of Factors**

Besides the five-factor test in *James*, there is another consideration. Counterbalancing the public's right to know the identity of persons availing themselves of the court system is the public interest in protecting rape victims. In *Cabrera*, the Court recognized that "[c]ourts generally allow a plaintiff to litigate under a pseudonym in cases containing allegations of sexual assault because they concern highly sensitive and personal subjects." *Cabrera*, 307 F.R.D. at 5 (*citations omitted*). The court continued to observe "a strong [public] interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes.'" *De Amigos*, No. 11-cv-1755, at *6 (*quoting Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195-96 (E.D.N.Y. 2006))." *Cabrera*, 307 F.R.D. at 6. In *Kolko,* the court observed "[a]dditionally, the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes. *See Doe v. Evans*, 202 F.R.D. 173, 176 (E.D.Pa.2001) (granting anonymity to sexual assault victim)." *Kolko*, 242 F.R.D. at 195-96.

A recent New York state appellate decision accurately assessed the problem when it dismissed a defamation claim by an accused abuser, holding that the lower court's decision allowing the claim to proceed "has the effect of emboldening sexual assaulters who seek to weaponize the legal system in order to silence their victims." *Sagaille v. Carrega*, 194 A.D.3d 92, 94, 143 N.Y.S.3d 36, 38 (N.Y. App. Div. 2021), *leave to appeal denied,* 37 N.Y.3d 909, 174 N.E.3d 710 (2021).  As the *Sagaille* court noted,

> sexual assaults remain vastly underreported, primarily due to victims' fear of retaliation. . . . most victims cannot afford years of litigation, nor do they

> wish to have their personal information disclosed through invasive discovery or to relive their personal trauma through litigation, including depositions, filings, and testimony in court. They do not wish to endure continued unwanted interaction with the person alleged to have assaulted them through the litigation process.

*Id.* at 194 A.D.3d 94 (footnote omitted).

In the instant case, Plaintiff is a rape victim. Unlike when this motion was previously heard, the Court has declared that Sidar is liable for the three counts brought in the Complaint – Assault, Battery, and Intentional Infliction of Emotional Distress. If rape victims like her are required to disclose their identities, it will serve as a caution note to other rape victims and be viewed as another tool of retaliation by Defendants. This Court should not let that happen.

The *Doe v. Rector & Visitors of George Mason Univ.* case is particularly instructive. 179 F. Supp. 3d 583 (E.D. Va. 2016). Underlying the decision in that case was the fact that this Court believed that the Plaintiff, Doe, had been wrongfully accused of sexual misconduct. This Court noted that such an accusation carries a stigma, is a "matter of sensitive and highly personal nature" and is likely to result in "'retaliatory physical or mental harm' based on the accusations alone." *Rector*, 179 F. Supp. 3d at 593. In the present case, the evidence is overwhelming, including Sidar's attempts to avoid providing a DNA sample, that Sidar raped Plaintiff. Like in the *George Mason* case, the wronged party should not be exposed to public exposure of her rape, which is a "matter of sensitive and highly personal nature." As explained in Plaintiff's Affidavit, Exhibit A, she will be exposed to "'retaliatory physical or mental harm' based on the accusations alone," including significant damage to her reputation and ability to obtain work in the Middle East, where most of her work is located, Exhibit A at ¶¶ 3-4, the fact of her rape will be exposed to her family, who she has not told about the rape, *id.* at ¶ 13, and she will be further traumatized

after the initial trauma of the rape itself. *Id.* at 7-12. All of these factors weigh against Sidar's attempt to remove the pseudonym that is protecting Plaintiff from these further harms.

Next, we discuss the *James* factors considering the general test, and the admonition in *Cabrera, Evans and Kolko*.

### B. Factors

#### 1. Avoidance of Annoyance and Criticism versus Preservation of Privacy in a Matter of Sensitive and Highly Personal Nature

Plaintiff details throughout her Complaint the mental harm and emotional anguish the rape caused her. Complaint, *ECF No. 1*, paras. 41-43, 51, 58, 66. The harm to her mental health is real and exposing her name publicly will only add to her anguish and suffering. It is not hard to imagine the mental anguish of publicizing that she was a victim of rape, especially given that her family does not even know about this rape.

The Court in *Doe No. 2 v. Kolko* outlines the scope of protection afforded rape victims in the various circuits citing opinions including *James*. The court noted that even the 7th Circuit, which hews strongly against the use of fictitious names, recognizes that sexual assault victims are commonly accorded anonymity. *Kolko*, 242 F.R.D. at 195, *citing Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir. 1997) (recognizing that rape victims are entitled to anonymity) (" fictitious names are allowed when necessary to protect the privacy of ... rape victims, and other particularly vulnerable parties or witnesses"), 112 F. 3d at 872; *see also Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir.2004).

The *Kolko* court also noted that the U.S. Supreme Court has recognized the seriousness of rape. *See Coker v. Georgia*, 433 U.S. 584, 597, 97 S.Ct. 2861 (1977) ("Short of homicide, [rape] is the ultimate violation of self") *cited in Kolko*, 242 F.R.D. at 196. Although written into the

7

criminal code, Virginia also recognizes crime victim rights, affording them protections of privacy and protection from intimidation, and avenues for restitution. *See*, Va. Code Section 19.2-11.01, A., A.1. and A.2. Although addressing victim rights in a criminal law context, this section clearly sets forth the Commonwealth's policy of protection of rape victims.

In the current case, Plaintiff is seeking restitution for her rape. Rape victims are still punished and criticized. Defendant sent text messages over several days trying to paint himself as the victim and begging Plaintiff not to take any action that will harm him, disregarding the harm he caused Plaintiff. Throughout the proceedings in Fairfax County Circuit Court, he sought to avoid jurisdiction and attempts to collect his DNA. In one instance, he requested a protective order limited to prohibiting Plaintiff from sharing DNA results with the London Metropolitan Police. The Court wisely declined noting that it would not be a party to suppressing evidence in a criminal investigation in another country. The strong public policy to protect rape victims hews strongly in favor of Plaintiff retaining anonymity.

### 2. Risk of Retaliatory Physical or Mental Harm to the Requesting Party or even more critically, to innocent non-parties

Another deciding factor in favor of anonymity is the risk of retaliatory physical or mental harm. "Related to the third factor is the concern "'whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties . . . .' *James*, 6 F.3d at 238." *Kolko*, 242 F.R.D. at 195.

Plaintiff has been subjected to numerous baseless motions by Defendant in his attempts to delay her efforts to seek redress. One instance is the baseless personal jurisdiction motion pressed by Defendant, leading to Judge Bellows in Fairfax County finding personal jurisdiction and levying attorneys' fees due to the baseless nature of Defendant's claim. Another is his

numerous attempts to avoid having to produce a DNA sample even though he voluntarily provided one to the London Metropolitan Police.

Beyond Defendant's continued assault on Plaintiff is a more important issue. As noted above, the Plaintiff works in governmental and military contracting worldwide, including in the Middle East. It is a well-documented fact that women who have been raped are subjected to ridicule, abuse, arrest, and prosecution in the Middle East. In January 2019, Frontiers in Psychology published a paper entitled *Blaming the Victim of Acquaintance Rape: Individual, Situational, and Sociocultural Factors*. *ECF 24.1*. In that study the authors stated --

> Victims of sexual assault in many Middle Eastern communities are punished, even outcast by their families, or must marry their rapists in order to restore honor to their families (Ruggi, 1998).

*Id*. at 15. In an article published in Asia Times, the authors note that "[i]n some countries such as the United Arab Emirates, rapists can face the death penalty, but sex outside marriage, or *zina*, is also a serious crime, and women who have reported sexual assaults have then been arrested themselves." Asia Times online, *Arab countries struggle with the stigma associated with rape*, Ghazal, R., Jan. 1, 2019. *ECF 24.2*.

Plaintiff is rightfully afraid of the consequences if the fact that she was raped becomes publicized, especially in countries where she works and visits regularly. In light of her own personal experiences and well documented research and reporting, this fear is fully justified. Plaintiff should not have to suffer personal physical and legal risk in her work locations because she is pursuing her rights in the court system.

### 3. Ages of the Persons Whose Privacy Interests are Sought to be Protected

Both parties to this case are of majority age. As in *Va. Polytechnic* this factor is neutral.

*Doe v. Va. Polytechnic Inst*., Civil Action 7:21-CV-378 (W.D. Va. Mar. 29, 2022), at 4-5. That court noted that some of the James factors may be relevant to a case where others are not. *Id*. at 3. In the case of the Plaintiff in *Va. Polytechnic,* the Court determined that the third *James* factor is crucial when a party is underage but otherwise neutral when they are not. *Id*. at 4-5. The court determined that this factor weighed neither in favor nor against anonymity. *Id*. Given the fact neither party is a minor and considering the severe effect Defendant's rape of Plaintiff has had on Plaintiff's mental, emotional, and financial state, and significant risk of causing additional physical, legal, and financial harm if her identity is unmasked, this factor is at best neutral.

### 4.     Whether the Action is Against a Governmental or Private Party

This action is between private parties, and not against a government or other public entity. This factor would only weigh against Plaintiff if there was any risk of harm to the Defendant's reputation that would offset Plaintiff's need for anonymity. *See, generally, Va. Polytechnic* at 6. It is neutral in this case because Defendant has taken no steps, from the time of the rape until now, to conceal his identity, redact personal information from his discovery responses, request lifting of anonymity, or raise any risk of prejudicial harm to him. Plaintiff, on the other hand, has consistently and carefully worked to preserve her anonymity, and unlike the situation in *Cabrera*, further has taken no actions to publicly humiliate Defendant, even going so far as to mask his name in her contact list when first approaching the London Police. Lifting the veil of anonymity only harms Plaintiff, extends and amplifies the emotional toll this has taken on her, adds an additional layer of financial burden in responding to Defendant's motion at this late stage in their litigation history and risks exposing her to new physical, mental, and financial harm. At best, this factor is neutral in the analysis of the *James* factors.

### 5. Risk of Unfairness to the Opposing Party

As set forth in the Introduction, there is no risk of unfairness to the Defendant. The Defendant has known the identity of the Plaintiff from the time he raped her. In fact, he had known her through an academic program many years before the rape. He sent her extensive text messages over several days beginning within minutes of raping her in attempts to get her to stay quiet and not report the rape to the police or take other actions. He voluntarily met with the London Police and provided a DNA sample. He has known her identity from the beginning of the case. As is noted in numerous cases where the defendant knows the plaintiff's identity, there can be no prejudice to the defendant by maintaining pseudonymity. Defendant has described no unfairness to him in maintaining Plaintiff's anonymity. *See Doe v. Va. Polytechnic Inst.*, Civil Action 7:21-CV-378 (W.D. Va. Mar. 29, 2022), at 6; *W. M. v. Braskem Am., Inc.*, Civil Action No. 3:20-cv-00141 (S.D.W. Va. Mar. 26, 2020).

### C. Waiver or Laches; No Requests for Over Two and a Half Years

Prior to filing suit, counsel for the Plaintiff and Defendant engaged in extensive discussions. In none of those discussions did Defendant request anonymity, even when Plaintiff made clear that she would be filing an action. Plaintiff proceeded under a pseudonym in Fairfax County from the time she filed suit, in September of 2019 until she filed a nonsuit in November of 2022. At no time in those proceedings did Defendant request a lifting of the pseudonym designation. Defendant's filing is the first time he has raised this issue.

Defendant waived any right to relief on his motion, and that his motion is filed solely to create additional angst and emotional harm on Plaintiff. Like Defendant's untimely petition of appeal of an attorneys' fee award to the Virginia Supreme Court, filed after Plaintiff non-suited

and almost two years after the June 16, 2020 Order awarding attorneys' fees and which was summarily rejected by that Court just five days after the argument on the petition, Plaintiff believes Defendant is on a crusade to bankrupt Plaintiff in order to attempt to obtain a more favorable settlement, rather than address the merits of her case.

WHEREFORE, Plaintiff Jane Doe respectfully requests that the Court deny Defendant's Renewed Motion to Remove Pseudonym Designation and award any other relief this Court deems necessary and proper.

Respectfully Submitted,

Jane Doe, by Counsel
THE LAW FIRM OF FLETCHER, HEALD &
HILDRETH, PLC

By: __/s/ Thomas F. Urban II_____
THOMAS F. URBAN II, VSB #40540
FLETCHER, HEALD & HILDRETH, PLC
1300 17th Street North, Suite 1100
Arlington, Virginia 22209
(703) 812-0462; (703) 812-0486 (f)
urban@fhhlaw.com

Walter E. Steimel, Jr. (P*ro hac vice*)
Steimel Counselors Law Group PLLC
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
(202) 271-9258; (202) 652-2308
wes@sclgrp.com
*Counsel for Plaintiff Jane Doe*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 11th day of January, 2023, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Thomas F. Urban II*_____
Thomas F. Urban II